**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Employers' Resource Management Company, Inc., et al.<br><br>Plaintiffs,<br><br>vs.<br><br>Employers' Insurance of Wausau, et al.,<br><br>Defendants. | No. CV 02-1090-PHX-PGR<br><br>**ORDER** |

Pending before the Court is the Defendant/Counter-Claimant Wausau and Liberty Mutual's Motion for Summary Judgment on Plaintiff's Claims for Breach of Contract and Punitive Damages and Liberty Mutual's Claim for Breach of Contract (Doc. 112). The Court now rules on the motion.[1]

**I.   INTRODUCTION**

This case involves claims by Employers' Resource Management Company ("ERM") that the Defendants, Liberty Mutual Insurance Company ("Liberty") and Employers' Insurance of Wausau ("Wausau"), have engaged in wrongful conduct in connection with handling workers' compensation claims under a policy insuring ERM.

---

[1] Although Defendants/Counter-Claimants Wausau/Liberty requested oral argument on their motion for summary judgment, the Court concludes that such a hearing would not aid the Court in resolving the current motion.

ERM is a professional employer organization which provides various administrative support duties for a wide variety of employer clients throughout the United States. ERM provides payroll processing, arranges group health insurance plans, and obtains workers' compensation insurance coverage for its employer clients. For the policy period September 1, 1996 through September 1, 1997, ERM requested that its broker, Lockton Companies ("Lockton"), obtain bids from competing insurers for coverage. The prior year ERM was covered by Liberty; however, ERM felt that its account was too small to command attention from such a large insurer and instead desired to seek a long-term business relationship with another workers' compensation insurer. Ultimately, after receiving bids from various insurers, ERM selected Wausau.

After Wausau successfully bid on ERM's coverage, the parties entered into a high deductible policy arrangement. The general terms of the policy provided: (1) that ERM would pay a deductible of $250,000 per claim; (2) that Wausau would provide workers' compensation coverage from $250,000 to $1 million; (3) that Wausau would front the $250,000 per claim deductible and would be reimbursed by ERM; (4) that Wausau would adjust and administer all claims for a fee; (5) that ERM would fund an interest bearing, loss payable account from which Wausau could withdraw funds to pay for ERM's portion of the claims; (6) that ERM would provide a security or collateral account to cover its anticipated losses during any given policy year; (7) that the amount of ERM's security or collateral could be adjusted based upon the level of claim activity, loss payments and outstanding reserves; (8) that ERM would hold the security account open until (a) the closure of all the claims which were subject to the deductible plan or (b) the mutual agreement of ERM and Wausau to close it; and (9) that periodic claim reviews would take place between Wausau and ERM"s staff.

In addition to the above policy provisions, ERM's contract with Wausau included the written commitment that Wausau would follow a detailed list of Best Claims Practices. This assured ERM that Wausau would respond promptly and with immediate action and ongoing

communication to help injured workers, to insure compliance with the law, and to minimize costs. The Best Claims Practices obligated Wausau to investigate and administer claims. Specifically, Wausau expressly contracted not only to aggressively investigate suspicious claims, but to also pursue opportunities for ERM to recover costs and mitigate losses.

ERM maintained its workers' compensation insurance policies covering all of its client employers and their employees through Wausau exclusively until 1998. However, in 1998 Wausau was acquired by Liberty. After this merger, Wausau and Liberty remained distinct entities, but the handling and administration of ERM's workers' compensation claims was shifted from Wausau to Liberty in early 2000. Soon after the transfer, Liberty's underwriters determined that ERM's account was not sufficiently funded to cover ERM's portion of losses for prior policy years. Accordingly, on March 15, 2000, Liberty sent a letter to ERM proposing modifications to the previously agreed upon collateral arrangements. Through the letter, Liberty proposed additional security to cover losses for past policy years, and an increase on a "go-forward" basis.

As a result of Liberty's failure to adequately administer ERM's claims to its satisfaction and Liberty's demand for additional collateral for prior policy years, on July 5, 2000, ERM sent a letter announcing its termination of the policy effective August 1, 2000. On July 31, 2000, Liberty responded pointing out ERM's continuing obligations to pay its portion of claims throughout the life of the policy despite its cancellation. No further communication occurred between the parties until October 13, 2000 at which time ERM discontinued funding a claim payment account due to its concerns over Wausau/Liberty's failure to handle and administer the claims properly along with escalating claim payments.

During 2001, ERM and Wausau/Liberty discussed resolving the parties' respective liability under the aforementioned insurance policy but were ultimately unsuccessful. ERM reiterated to Wausau/Liberty that its abject failure to administer and handle the claims had substantially caused the cost of the claims to increase and that ERM should not be responsible for payment of the amounts incurred due to Wausau/Liberty's malfeasance.

- 3 -

1  Wausau/Liberty countered that there was nothing contained in the prior agreements which
2  would permit ERM to stop paying its portion of the claims.  By letter dated December 31,
3  2001, ERM provided Wausau/Liberty with a detailed analysis of Wausau/Liberty's
4  malfeasance in the handling of its claims and an estimate of the financial impact it had upon
5  ERM. In a January 4, 2002 response letter, Wausau/Liberty requested additional information
6  concerning ERM's belief that its claims had been mishandled, and ERM did so on March 6,
7  2002.  Despite the documentation that ERM provided to Wausau/Liberty, the company
8  ultimately rejected ERM's analysis of claim mismanagement and unilaterally set off ERM's
9  collateral depleting the security account and further demanded payment of approximately
10 $200,000.  Wausau Liberty threatened legal action if ERM did not make the payment as
11 demanded.

12     In response to the threat of legal action, on May 2, 2002, ERM initiated and filed suit
13 against Wausau/Liberty in Arizona Superior Court for Maricopa County alleging breach of
14 contract and bad faith.  Wausau/Liberty removed the case to federal court, and filed a
15 counterclaim against ERM for breach of contract.

## II.  LEGAL STANDARD AND ANALYSIS

17     Summary judgment is appropriate if there is no genuine issue as to any material fact
18 and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The
19 moving party bears the initial burden of establishing that there is no genuine issue of material
20 fact. Id., Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  After the moving party makes
21 a properly supported motion, the responding party must present specific facts showing that
22 a triable issue remains for trial. British Airways Bd. v. Boeing Co., 585 F.2d 946, 950-52
23 (9th Cir. 1978).  It must set forth, by affidavit or other admissible evidence, specific facts
24 demonstrating the existence of an actual issue for trial. Anderson v. Liberty Lobby, Inc., 477
25 U.S. 242, 252 (9186). In reviewing a motion for summary judgment, the Court must take the
26 responding party's evidence as true and all inferences are to be drawn in its favor. Eisenberg
27 v. Ins. Co. of N. Am., 815 F.2d 1285, 1289 (9th Cir. 1987).

A.     Choice of Law

Arizona courts typically apply the Restatement (Second) of Conflict of Laws to determine the controlling law in a contract dispute. Swanson v. Image Bank, 77 P.3d 439, 441 (Ariz. 2003). If a contract includes a specific choice-of-law provision then the Court will assess whether that choice is both valid and effective pursuant to § 187 of the Restatement. Id. However, in a situation where the parties did not expressly choose a particular state's law, the Court will determine which state has the most significant relationship to both the transaction and the parties and then apply that particular state's law.

In determining which state has the most significant relationship to the transaction and the parties, the Restatement directs the Court to consider the following factors: (1) the place of contracting; (2) the place of negotiating the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflicts of Laws § 188. Here the parties concur that Idaho law governs this action as evidenced by their utilization of the laws of the state of Idaho, and the authorities interpreting Idaho law, when addressing the instant motion. The Court agrees. ERM's principal place of business is in Idaho, the contact was negotiated, in part, in Idaho, and ERM monitored and Wausau/Liberty reported on all claims to ERM's headquarters in Boise, Idaho. Accordingly, the Court shall apply Idaho law to the claims at issue.

B.     Wausau/Liberty's Breach of Contract

Under Idaho law, insurance policies are a matter of contract between the insurer and the insured. Gordon v. Three Rivers Agency, Inc., 903 P.2d 128, 131 (Idaho Ct. App. 1995). In the absence of ambiguity, an insurance policy must be construed as any other contract and understood in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the contract. Id. In this case, the parties do not dispute the terms of the contract. The terms of the policy required Wausau/Liberty to pay promptly when due the

benefits required of ERM by the workers' compensation laws. In undertaking this obligation, Wausau/Liberty agreed to follow its Best Claims Practices. The Best Claims Practices include the following provisions:

> 3. We communicate with you as soon as you notify us of a work-related injury.
> - We gather important facts about the injury, the employee, witnesses and any other relevant parties.
> - We promptly file the required statutory forms for you . .
> - We discuss the best opportunities to control the costs of your claim.
> - We answer any questions you may have.
>
> 4. We contact your injured worker promptly after discussing the situation with you or your representative. . . .
>
> 5. We contact medical providers as soon as possible. . . .
>
> 6. We initiate communication throughout the claim handling process.
> - We advise you of progress being made during all phases of handling your claim to keep you informed and to avoid last minute surprises.
>
> We bring peace of mind to you by paying legitimate claims promptly and advising you immediately of any questionable claims issues . . . .
>
> 1. We thoroughly review and honor our contractual obligations . . . .
> - We thoroughly investigate every claim and accurately pay legitimate workers compensation benefits to your worker according to the payment schedules required by law. . . .
> - We deny payment of non-meritorious claims.
>
> 2. We advise you of any questionable claims as soon as we become aware of them.
> - If we believe the injury may not be compensable or if we identify a coverage issue that may affect payment of benefits, we immediately communicate that information to you.
>
> 3. We effectively pursue opportunities for you to recover costs and mitigate your loss.
> - We quickly determine if a workplace accident or injury may be the result of a third party's action. If so, we immediately explore subrogation opportunities. . . .

- 6 -

> 4. We aggressively investigate suspicious claims and assist authorities in determining if fraud may be present. . . .
> - We thoroughly investigate suspicious activity through our Special Investigative Unit.
> - We conduct surveillance when we believe that the facts of the claim justify it . . .
> 5. When litigation is required we develop and communicate to you a sound and effective legal strategy. . . .

Wausau/Liberty contends that it complied with both the expressed and implied terms of the contract between the parties, and that ERM's breach of contract claim should be dismissed. First, Wausau/Liberty asserts that there is no evidence showing that the company failed to pay workers' compensation when required to by law. Wausau/Liberty points out that the express terms of the policy provided it with "the right to investigate and settle claims, proceedings or suits," but the policy did not dictate a particular manner or method for the insurer to follow in carrying out this express contract term. Wausau/Liberty states that they were required to adjust and pay workers' compensation claims and did so according to the agreement between the parties.

ERM responds that while the contract gives Wausau/Liberty the right to investigate and settle claims subject to ERM input, Wausau/Liberty also has the duty to defend against claims seeking benefits not required under the workers' compensation statutes of the states involved. That is, ERM contracted with the insurer not simply to have Wausau/Liberty act as a conduit for the transfer of monies, but instead to have Wausau/Liberty actively manage and investigate claims, contest inappropriate claims, and only pay appropriate and required workers' compensation benefits.

To support its motion for summary judgment, Wausau/Liberty failed to submit any affidavits, and instead simply attached certain exhibits to its statement of facts. Those exhibits, other than the pleadings already in the file, are not in the record and the Court cannot consider them for purposes of resolving the present motion. In contrast, ERM presents evidence to the Court which raises genuine issues of material fact as to whether

there was improper claims handling by Wausau/Liberty and thus a material breach of the contractual agreement between the insurer and the insured. For example, ERM's expert witness affidavits proclaim that Wausau/Liberty failed to gather important facts about injuries, the employees, witnesses, and other relevant parties. In addition, those affidavits proffer that in most situations, claims were paid with only minimal investigation and on many occasions, no true investigation at all. ERM asserts that with respect to almost all claims, ERM was not advised of the progress being made on its claims nor was there a discussion of the best opportunities to control costs of claims either with ERM or with Wausau/Liberty adjusters. In fact, Wausau/Liberty's own expert concedes that the insurer breached the contract between the parties and assesses the resulting damages at approximately $335,000. These facts, at the very least, preclude any grant of summary judgment in Wausau/Liberty's favor.

### C. ERM's Breach of Contract

In addition to moving for summary judgment on ERM's claims for breach of contract and punitive damages, Wausau/Liberty also moves for summary judgment on their counter-claim for breach of contract asserted against ERM. Wausau/Liberty asserts that by virtue of the contractual agreement between the parties, ERM agreed to continue paying its portion of claims until the closure of all claims asserted under the policies or by mutual agreement. Wausau/Liberty maintains that the written agreements between the parties did not permit ERM to stop paying for its portion of losses sustained under the policy. However, ERM did, in fact, stop paying claims as of October 13, 2000. Wausau/Liberty contends that the Court should rule, as a matter of law, that ERM breached the terms of its contract with Wausau/Liberty.

While ERM did undertake certain obligations through its contract with Wausau/Liberty, those obligations were conditioned upon the performance of the insurer. ERM asserts that a material breach by Wausau/Liberty excuses any non-performance on its

part. The Court agrees. The Idaho Supreme Court has stated that performance by one party to a contract is excused where one of the other parties has committed a material breach that touches the fundamental purpose of the contract. Ervin Const. Co. v. Van Orden, 874 P.2d 506, 510 (Idaho 1993). Whether a breach of contract is material is a question of fact. Id. Furthermore, one cannot declare forfeiture of a contract where he himself is at fault. Huggins v. Green Top Dairy Farms, 273 P.2d 399 (Idaho 1954).

Under the terms of the contract, Wausau/Liberty was obligated to actually adjust and manage ERM's claims. Wausau/Liberty was to promptly and fairly pay claims that were due; however, the insurance provider was also required to insure that asserted claims were valid, medical treatment was necessary and proper, payments were not duplicates or excessive, and payments were stopped when the claimant became able to return to work. ERM, through various affidavits, presents the Court with evidence that Wausau/Liberty failed to perform these basic responsibilities and comply with the material obligations of the contract. Under the facts currently before the Court, the legitimacy of Wausau/Liberty's claim payments is in dispute and those payments are the basis of the insurer's counterclaim. As such, Wausau/Liberty is not entitled to summary judgment in its favor on its counterclaim for breach of contract.

D. ERM's Claim for Punitive Damages

Wausau/Liberty contends that neither the facts nor the law support Plaintiff's claim for punitive damages. However, the Court concludes that the Defendant Wausau/Liberty is not entitled to summary judgment regarding punitive damages because it is the Court's policy, when a trial must be held, to resolve the issue of the propriety of punitive damages through the resolution of objections to jury instructions and/or through the resolution of a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. Therefore, Wausau/Liberty's Motion for Summary Judgment on ERM's claim for punitive damages is denied.

### E. LEXCO

Defendant LEXCO is a Bermuda corporation and a wholly owned subsidiary of Liberty. Before it was insured by Wausau, ERM had been insured by Liberty. As part of ERM's insurance program with Liberty, ERM funded a reimbursement deductible policy through LEXCO. After the termination of ERM's policy with Liberty in 1996, the LEXCO account contained the remaining funds. Six-months after it filed its original complaint against Wausau/Liberty, ERM moved to amend to include a claim against LEXCO. ERM claimed that Liberty by and through LEXCO was wrongfully withholding approximately $800,000 of ERM's funds. In February 2004, Liberty paid ERM the LEXCO funds. However, Plaintiff maintains that it sustained damages resulting from the time the funds were wrongfully withheld. Wausau/Liberty asserts that ERM has not come forward with evidence proving those damages; therefore, summary judgment is appropriate to dispose of the claim against LEXCO.

ERM responds that the funds were admittedly returned to ERM, but only after ERM filed the present action. While ERM agrees that it is not entitled to double recovery, it insists that it is entitled to interest on the money during the time it was wrongfully withheld. In addition, ERM maintains that it is entitled to the attorneys' fees it was required to expend in order to assert its cause of action against LEXCO.

The Court concludes that the questions of whether ERM is entitled to interest and attorneys' fees regarding the withheld funds, along with the amount of interest and recoverable costs, are questions of fact not amenable for resolution on summary judgment. A valid claim remains against LEXCO.

### III. CONCLUSION

The Court concludes that genuine issues of material fact exist in this case; therefore, the claims against Wausau/Liberty and the counterclaim against ERM cannot be disposed of through summary judgment. Accordingly,

IT IS ORDERED that the Defendants'/Counter-Claimants' Motion for Summary Judgment on Plaintiffs' Claims for Breach of Contract and Punitive Damages and Liberty Mutual's Claim for Breach of Contract (Doc. 112) is DENIED.

IT IS FURTHER ORDERED that Wausau/Liberty's Motion for Oral Argument on Defendants' Motion for Summary Judgment (Doc. 178) is DENIED.

DATED this 15th day of March, 2006.

Paul G. Rosenblatt
United States District Judge